HENDERSON, P. J„
— Defendant herein has been charged with a misdemeanor under the Pennsylvania Clean Streams Act, the specific charge being the discharge of industrial waste into the waters of the Commonwealth. The case was submitted to the grand jury, and the bill was approved. At the request of each party, the court agreed to try the matter without a jury provided the Commonwealth and defendant could enter into a stipulation as to all the facts. Such stipulation is filed herewith. The specific charge in question is brought under the Act of June 22, 1937, P. L. 1987, art. III, sec. 301, 35 PS §691.301, which reads as follows:
“No person shall place or permit to be placed, or discharged or permit to flow, or continue to discharge or permit to flow, into any of the waters of the Commonwealth any industrial wastes, except as hereinafter provided in this act.”
Defendant is alleged to have permitted industrial waste, namely silt, to be discharged from its limestone mining operation in Slippery Rock Township, Lawrence County, Pa., into an unnamed tributary of Slippery Rock Creek on July 13, 30 and 31,1969.
*12 Reference to the stipulation of facts indicates that defendant operates a limestone quarry from which it mines limestone by open-pit mining methods. Defendant’s operation is not engaged in any way with coal mines, coal collieries, coal breakers or other coal processing operations. Periodically, water collected on the floor of the quarry where it commingled with loose sedimentary material, consisting mostly of rock particles, forming a silt. This combination of water and silt was pumped into a settling basin from which, after a settling period, it was permitted to flow off the top through a pipe into an unnamed tributary of Slippery Rock Creek. On July 13, 30, and 31, 1969, a prohibited discharge of silt from the settling basin was found in such tributary. On the first two days it was traced to the overflow pipe of the settling basin and on the third day was traced to a breach in the wall of the basin.
The defense in this case is based on the position that the act in question did not apply to limestone mining operations. If it is determined that such act at the time in question did apply to limestone mining operations, defendant will be found guilty under the stipulation of facts.
In the definitions section of the act prior to the 1970 amendment, 35 PS §691.1, we find the following definitions:
“ ‘Establishment’ shall be construed to include any industrial establishment, mill, factory, tannery, paper or pulp mill, garage, oil refinery, oil well, boat, vessel, mine, coal mine, coal colliery, breaker or coal processing operations not including dredging operations within the limits of a stream, quarry, and each and every other industry or plant or works in the operation of which industrial wastes are produced.
“ ‘Industrial waste’ shall be construed to mean any liquid, gaseous or solid substance, not sewage, resulting from any manufacturing or industry, or from any *13 establishment, as herein defined, and mine drainage, silt, coal mine solids, rock, debris, dirt and clay from coal mines, coal collieries, breakers or other coal processing operations”: As amended August 23,1965, P. L. 372, sec. 1.
The result of the case will be primarily determined by the question of whether or not, under these definitions, the Clean Streams Act provisions were violated by defendant.
Defendant will be considered a “person” under the act.
Under the stipulations filed, it is agreed that defendant did discharge silt-laden water, or permit the flow of silt-laden water, from the accumulations in its quarry and settling basin.
The discharge or flow into the unnamed tributary of Slippery Rock Creek was a discharge or flow into the “waters of the Commonwealth” within the meaning of the act.
We find that defendant’s operation over the period in question was such as to meet the requirement of being an “establishment” within the meaning of the act. Section 1 of the act, by its terms, includes mines and quarries as a category separate and apart from coal mines or coal operations. Certainly, defendant’s open-pit limestone operation would fall, and was intended to fall, within either or both of these categories. In the last portion of the statutory definition of an establishment, we find, immediately following the word “quarry,” this general wording:
“. . . and each and every other industry or plant or works in the operation of which industrial wastes are produced.”
Defendant’s operation is a mine, as contrasted to a coal mine, is a quarry, and is the type industry, plant or works in the operation of which industrial wastes are produced.
*14 We further find the discharge in question was a discharge of “industrial waste” within the meaning of the act. The statutory definition as cited above includes certain liquid or solid substances being emitted or discharged by an establishment, which, in the opinion of the court, would be sufficient to satisfy the facts in the case at bar. However, the statutory definition goes on to specifically include “mine drainage, silt,” as well as certain solids relating to coal operations. We read the statute as specifically identifying both mine drainage and silt as types of industrial waste independent of coal operations, and, therefore, hold that such discharge of silt as set forth in the stipulation is covered under the statutory definition of “industrial waste.”
The Clean Streams Act has been amended in some particulars since this action arose by Act No. 222 of 1970. Defendant’s position is that the subsequent amendment indicates a legislative intent to now include such acts as defendant’s, which were previously not included. We shall review in part the changes resulting from such amendment of 1970.
Section 301 of the act has now been amended to include municipalities as possible violators of the act. This would indicate no legislative intent helpful in the determination of the case at bar.
The penalty provisions of section 309 have been changed. Each of these two amendments would indicate only a legislative intention to more forcefully require compliance with the general antipollution purpose of the act.
Section 1 has also been amended since the alleged violation in question. The definition of an “establishment” has been amended by deleting the words “coal mine,” which follow the word “mine,” and by including all industrial plants or works within the act terminology, whether or not they produce industrial waste. *15 Here again, these amendments show a broadening of the scope of the original purpose of the act.
Also in section 1 of the 1970 amendment we find that a definition of “mine” has been added, as follows:
“ "Mine’ shall be construed to mean any coal mine, clay mine or other facility from which minerals are extracted from the earth.”
The prior law did not include any definition of this term. Defendant argues that since limestone mining is hereby specifically included in the amendment, it can be assumed that the legislature did not intend limestone mining to be covered by the act prior to the amendment. However, this addition of a definition for the word “mine” must be considered in conjunction with the deletion of the words “coal mine” (following the word “mine”) in the definition of “establishment.” The former act specifically included “mine, coal mine.” By deleting “coal mine” from the act, and adding a definition of “mine” to include coal mining, we see that the two acts accomplish the same purpose in that each covers other type mining than coal mining. Comparison of the act before and after the 1970 amendment indicates another reason why the words “coal mine” were deleted and a definition of “mine” was included which covers not only coal mining but all other mining. Prior to the recent amendment, under section 315 only coal mines were required to secure a permit from the board prior to commencing operations. Other mining, including limestone mining, was only required to secure a permit if industrial wastes were discharged into the waters of the Commonwealth under section 307. Under the 1970 amendment, and the specific definition of “mine” included therein, all mining operations have been brought within the purview of the amended section 315.
In the amendment of the definition of industrial *16 waste, additional substances were added by the amendment which were not included as industrial waste prior to the amendment. However, the waste discharged by defendant in the within case (silt) was specifically included both in the statute at the time this case arose and in the recent amendment. No interpretation helpful to defendant can arise therefrom.
Defendant argues that in the title provisions of the act prior to the 1970 amendment no reference is made to mining other than coal mining. Defendant then compares this with the title provisions of the 1970 amendment which purport to regulate the operation of mines generally rather than only coal mines. Defendant would have us assume a legislative intent therefrom to the effect that until the 1970 amendment no mines other than coal mines were included within the statutory provisions. We disagree. The title provisions in question prior to the 1970 amendment refer only to the requirement for a permit. Both before and after the 1970 amendment such discharge of industrial waste by an establishment such as we have in the case at bar was clearly prohibited. The title provisions and the statutory provisions adequately provide for this, both before and after the 1970 amendment.
The balance of the amended provisions are not helpful in determining legislative intent as it would apply to the case at bar.
Lastly, defendant places reliance on its efforts to control the silt discharge as a defense to the action. It installed a settling basin from which overflow was discharged into the stream. On two of the dates alleged, surface silt-laden discharge occurred through the overflow pipe. On the third date in question, the discharge occurred because of a breach in the wall of the basin, apparently the result, or partial result, of extraordinary rainfall. Each of the three dates on which the violations *17 were alleged to have occurred fall within about three weeks of the time of the construction of the settling basin. We do not find this argument persuasive.
ORDER
Now, November 27, 1970, in conformity with the opinion filed herewith, defendant in this action is hereby found guilty as charged.